UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌──────────────────────────────────────────┐
  OMAR MONTES, individually and on behalf of all
  others similarly situated,

                              Plaintiff,

        v.

  COUNTY COMFORT HOME SOLUTIONS, INC.,
  and JOSEPH JENSEN,

                              Defendants.
└──────────────────────────────────────────┘
```

No. 23-CV-7579 (KMK)

OPINION & ORDER

Appearances:

Nicole Deanna Grunfeld, Esq.
Katz Melinger PLLC
New York, NY
*Counsel for Plaintiff*

Hugh G. Jasne, Esq.
Jasne & Florio
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Plaintiff Omar Montes ("Montes"), on behalf of himself and similarly situated

employees, brought this Action against Defendants County Comfort Home Solutions, Inc.

("CCHS"), and CCHS' owner, Joseph Jensen ("Jensen), pursuant to the Fair Labor Standards

Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, the New York Labor Law ("NYLL"), § 190 *et*

*seq.*, 26 U.S.C. § 7434, and the New York State Human Rights Law ("NYHRL"), § 290 *et seq.*

(*See generally* Compl. (Dkt. No. 1).)  The Parties now seek approval of their proposed

settlement.  (*See* Dkt No. 24-1.)  For the reasons that follow, the Parties' Motion for Approval of

Proposed Settlement is denied.

I.  Background

A.  Factual Background

Plaintiff is a former HVAC technician for CCHS, a general contractor that provides, inter alia, HVAC and heating services.  (Compl. ¶¶ 6, 10, 26.)  Plaintiff's responsibilities included mechanical maintenance, inspection, repair, installation, alteration, and removal of HVAC, refrigeration, and related systems; performing preventive maintenance and routine servicing of equipment; unloading and organizing mechanical equipment delivered to CCHS' facilities; and driving CCHS' employees to and from work sites.  (*Id.* ¶ 27.)  Plaintiff was employed by CCHS from approximately May 1, 2016, through October 3, 2022, and from July 17, 2023, through October 2023.  (*Id.* ¶ 26; Mot. for Settlement Approval ("SA Mem.") (Dkt. No. 24) 1 (indicating that Plaintiff's employment ended around October 2023).)

Plaintiff alleges that throughout his employment with CCHS, he regularly worked over 40 hours per week and was always compensated $30 per hour.  (*See id.* ¶¶ 28–42.)  More specifically, Plaintiff alleges that from approximately May 1, 2016, to December 31, 2019, he worked between 56.5 and 65.5 hours a week, (*see id.* ¶¶ 28–29), from approximately January 1, 2020, to May 31, 2020, he worked between 62.5 and 72.5 hours per week, (*see id.* ¶¶ 31–32), from approximately June 1, 2020, to October 3, 2022, he worked between 61.5 and 71.5 hours per week, (*see id.* ¶¶ 39–40), and from approximately July 17, 2023, to October 2023, he worked 45 hours per week, (*see id.* ¶ 42).

Plaintiff alleges that he was paid via direct deposit for up to 40 hours of work per week and via cash for hours in excess of 40 hours per week.  (*Id.* ¶ 46.)  Plaintiff further alleges that Defendants submitted false tax returns that did not accurately report Plaintiff's overtime work to the Internal Revenue Service ("IRS") in violation of 26 U.S.C. § 7434.  (*See id.* ¶¶ 46–50.)

Around September 12, 2022, Plaintiff sustained a leg fracture and ligament tear in the course of his employment. (*Id.* ¶ 51.) At the advice of his doctor, Plaintiff stayed home until October 2, 2022, at which point he received medical clearance to return to work. (*Id.* ¶¶ 52–53.) When Plaintiff asked Jensen for medical accommodations, Jensen terminated Plaintiff's employment. (*Id.* ¶¶ 54–56.) Plaintiff received worker's compensation benefits until May 2023 and was re-hired by CCHS in June 2023. (*Id.* ¶¶ 57–58.)

Plaintiff asserts several violations based on these events. He alleges that Defendants knowingly and willfully: (1) failed to pay required overtime wages, (*id.* ¶¶ 66, 72); (2) failed to timely pay wages, (*id.* ¶79); (3) failed to issue proper payroll notices, (*id.* ¶ 84), and wage statements, (*id.* ¶ 87); (4) filed fraudulent W-2 forms with the IRS, (*id.* ¶ 94–96); and (5) discriminated against Plaintiff by failing to provide reasonable accommodations, (*id.* ¶ 110). Accordingly, Plaintiff seeks unpaid wages, liquidated damages, statutory penalties, and attorneys' fees and costs. (*See id.* at 16–17.)

B.  Procedural History

Plaintiff filed his Complaint on August 25, 2023. (*See* Compl.) Defendants submitted their Answer on October 31, 2023. (Dkt. No. 11.) On May 31, 2024, the Parties notified the Court via letter that they had reached a settlement in principle. (*See* Dkt. No. 22.) On August 26, 2024, the Parties filed a Joint Motion for Settlement Approval pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). (SA Mem.; *id.*, Ex. A ("Settlement Agreement" or "SA") (Dkt. No. 24-1).)

## II.  Discussion

### A.  Standard of Review

Under Federal Rule of Civil Procedure 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute."  "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2).  The Second Circuit has held the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect."  *Cheeks*, 796 F.3d at 206.  Therefore, the Court must be satisfied the parties' agreement is "fair and reasonable."  *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015); *see also Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015) (same).

In deciding the fairness of a settlement, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement."  *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016) (same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

Although the Court must consider the totality of circumstances, the most significant factors are:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length

4

bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *see also Zamora v. One Fifty Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) (same); *Garcia v. Jambox, Inc*., No. 14-CV-3504, 2015 WL 2359502, at *2 (S.D.N.Y. Apr. 27, 2015) (same).

Certain other factors weigh against finding the proposed settlement fair and reasonable, which include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA noncompliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336; *see also Villalva-Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (same); *Garcia*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same).

This decision "is thus an information intensive undertaking," *Camacho*, 2014 WL 6985633, at *2, and "the [P]arties must provide the [C]ourt with enough information to evaluate the bona fides of the dispute," *Gaspar v. Personal Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (citation and quotation marks omitted). To this end, courts require information regarding:

> the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure . . . to [the] plaintiffs . . . , the bases of estimates of [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs' success on the merits, and evidence supporting any requested fee award.

*Id.* (first alteration in original) (quotation marks omitted) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015)).

B.  Analysis

      1.  Whether the Settlement Amount is Fair and Reasonable

Under the Settlement Agreement, Defendants agree to pay Plaintiff a total sum of $35,000.  (*See* SA ¶ 4.)  Defendants will make six payments to Plaintiff—the first four will be $5,000 each and the last two will be $7,500 each.  (*Id.* ¶¶ 4(a)–(b).)  The first payment is made upon signing of the Settlement Agreement, and each payment thereafter is made at 30-day intervals.  (*Id.* ¶¶ 4(c)(i)–(vi).)  The Parties do not specify the method of payment, but the Settlement Agreement provides that payment can be made by check, wire transfer, or any other agreed-upon method.  (*Id.* ¶ 4(d).)  Plaintiff is expected to pay all expenses including legal fees. (*Id.* ¶ 4(e).)

Plaintiff alleges he is owed approximately $61,200 in unpaid wages, $61,200 in liquidated damages, $10,000 in damages for payroll notice and wage statement violations, $30,000 for violations of 26 U.S.C. § 7434, and $98,092.50 in lost wages under the NYSHRL. (*See* SA Mem. 2.)

The Court does not have sufficient information to determine whether the settlement amount is fair and reasonable.  Out of the settlement amount of $35,000, Plaintiff will retain $22,830.67 and pay his counsel fees and costs in the amount of $11,415.33.  (SA Mem. 3, 5.) The Parties represent that Plaintiff's best-case total recovery would be approximately $260,492.50, including liquidated damages.[1]  (*See id.* 2.)  The Parties do not provide a clear

---

[1] The Court arrives at this amount by the following calculation:  $61,200 + $61,200 + $10,000 + $30,000 + $98,092.50.  (*See* SA Mem. 2.)

explanation for the methodology used to calculate the components of the total best-case recovery

or the settlement amount.  The Parties must submit a more detailed explanation before the Court

will approve the settlement amount.  *See Zekanovic v. Augies Prime Cut of Westchester, Inc.*,

No. 19-CV-8216, 2020 WL 5894603, at *3 (S.D.N.Y. Oct. 5, 2020) (denying a motion for

settlement approval because the Parties failed to provide a detailed calculation of the settlement

amount); *Nights of Cabiria*, 96 F. Supp. 3d at 176 ("The parties have not provided the court with

each party's estimate of the number of hours worked or the applicable wage." (citation and

alteration omitted)); *Gaspar*, 2015 WL 7871036, at *2 (noting that although the court was

satisfied with the parties' explanation of the methodology used to generate settlement amounts,

the parties failed to submit the "underlying data" to which the methodology was applied

(emphasis removed)).

### 2.  Good Faith

The Court is satisfied by the Parties' representation that the Settlement Agreement was

negotiated competently, in good faith, at arm's length, and that there was no fraud or collusion.

(*See* SA Mem. 3–4.)

### 3.  Similarly Situated Plaintiffs

Neither the Court nor Plaintiff is aware of "the presence of other employees situated

similarly to the claimant," *Wolinsky*, 900 F. Supp. 2d at 336, militating in favor of settlement.

While the Parties do not aver as to the presence or lack thereof of similarly situated employees,

courts have noted that the fact that no other employee has come forward and that the plaintiff

would be the only employee affected by settlement and dismissal are factors that support

approval of the proposed settlement.  *See Escobar v. Fresno Gourmet Deli Corp.*, No. 16-CV-

6816, 2016 WL 7048714, at *3 (S.D.N.Y. Dec. 2, 2016) (noting that no other employee came

forward and that the plaintiff would "be the only employee affected by the settlement and

dismissal," and that these facts supported approval of the proposed settlement); *Penafiel*, 2015

WL 7736551, at *2 (noting that the fact that "[n]o other employee ha[d] come forward"

supported settlement approval); *Santos v. Yellowstone Props., Inc.*, No. 15-CV-3986, 2016 WL

2757427, at *3 (S.D.N.Y. May 10, 2016) (same).

### 4. Likelihood of Recurrence

As Plaintiff is no longer employed by Defendants, (*see* SA 4), there is a low "likelihood

that the claimant's circumstance will recur," *Wolinsky*, 900 F. Supp. 2d at 336 (citation omitted),

which weighs in favor of approving the Settlement Agreement.

### 5. Release Provision

"[T]he FLSA is a uniquely protective statute," *Cheeks*, 796 F.3d at 207, and courts will

not approve settlement agreements that contain overly broad release provisions that would

"waive practically any possible claim against the defendants, including unknown claims and

claims that have no relationship whatsoever to wage-and-hour issues," *id*. at 206 (quoting *Nights

of Cabiria*, 96 F. Supp. 3d at 181); *see also Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-

4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) ("If the parties wish to obtain approval

of their settlement, any release provision must be limited to the claims at issue in this action.");

*Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824, 2015 WL 6550560, at *3

(E.D.N.Y. Oct. 28, 2015) (rejecting a settlement agreement where "the parties' release language

. . . include[d] 'actions and/or claims against the [d]efendants, known or unknown, which [the

plaintiff] may have as of the date of this [a]greement including but not limited to any alleged

violation of any federal, state or local law, regulation, rule or ordinance which relates in any way

to [the] [d]efendants' payment of wages to [the] [p]laintiff during [the] [p]laintiff's employment

with [the] [d]efendants'"); *Flood v. Carlson Rests. Inc.*, No. 14-CV-2740, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015) (rejecting a settlement agreement that, in effect, "waive[d] any possible claims against [the] [d]efendants—including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues").  To that end, releases must generally be limited to wage and hour issues, *see Cheeks*, 796 F.3d at 206, and "may include claims not presented and even those which could not have been presented, but only when the released conduct arises out of the identical factual predicate as the settled conduct," *Nights of Cabiria*, 96 F. Supp. 3d at 181 (citation and quotation marks omitted).

Here, the Settlement Agreement release provides in relevant part that "each Party does hereby knowingly, voluntarily, unconditionally and irrevocably release and forever discharge the other Party" as to "all claims either Party raised against any other Party in the pleadings filed in [this Action] or in [the related] EEOC Action or based on the allegations asserted therein."  (SA ¶ 24.)  "This . . . language expressly limits the release provision to the claims at issue in this Action, which is what is called for under the caselaw."  *Khan v. Yonkers Auto Ctr., Inc.*, No. 19-CV-5581, 2022 WL 2866459, at *4 (S.D.N.Y. July 21, 2022); *see also Salami v. B S D Food LLC*, No. 21-CV-2704, 2022 WL 671980, at *6 (S.D.N.Y. Mar. 7, 2022) (noting that "under the Second Circuit's precedent, any release provision must be limited to the claims at issue in th[e] action") (quotation marks omitted)); *Lazaro-Garcia*, 2015 WL 9162701, at *2 (reciting the same principle); *Nights of Cabiria*, 96 F. Supp. 3d at 181 (holding that release must be limited to "conduct [that] arises out of the identical factual predicate as the settled conduct").  Thus, the Court finds that this release provision is appropriately narrow.  *See Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751, 2017 WL 2778029, at *3 (E.D.N.Y. June 23, 2017) (approving release that, "while broad, . . . relates specifically to wage and hour issues without encompassing, for

9

example, prospective discrimination claims"); *Perez v. Ultra Shine Car Wash, Inc.*, No. 20-CV-782, 2022 WL 2129053, at *4–5 (S.D.N.Y. June 14, 2022) (approving release that was "limited solely and only to wage and hour claims that have arisen on, or prior to, the date th[e] [a]greement [was] executed").

The Settlement Agreement is not one-half of a bifurcated agreement; rather, it encompasses both FLSA and non-FLSA claims. (*See generally* SA.) The Parties claim that the Court's review is not required for non-FLSA claims. (*See* SA Mem. 3.) Several courts have analyzed bifurcated settlements where the parties negotiated separate settlements for FLSA and non-FLSA claims and have taken various positions on the permissibility of this approach and its impact on the *Cheeks* review. *See Pavone v. Diesel U.S.A., Inc.*, No. 21-CV-5219, 2022 WL 1177344, at *2 (S.D.N.Y. Mar. 2, 2022) ("In this Circuit, district courts' approaches to bifurcation of settlement have varied; some courts permit bifurcated settlements, while others require parties to submit the non-FLSA settlement for court review." (citations omitted)); *Doe v. Solera Cap. LLC*, No. 18-CV-1769, 2021 WL 568806, at *1 (S.D.N.Y. Jan. 20, 2021) ("[W]here the parties enter into bifurcated settlement agreements to dismiss the suit with prejudice—in which one agreement resolves the FLSA claims and the other all non-FLSA claims—a court must take into account at least the existence of the non-FLSA settlement in assessing the reasonableness of the FLSA settlement." (citation omitted)); *Torres v. Mc Gowan Builders*, No. 18-CV-6099, 2020 WL 5369056, at *2 (E.D.N.Y. Sept. 8, 2020) (collecting cases). The Second Circuit has not yet addressed whether the bifurcated settlement approach is permissible under *Cheeks*. *See Fisher v. SD Prot. Inc.*, 948 F.3d 593, 607 n.12 (2d Cir. 2020) ("We do not have such a bifurcated settlement before us and thus we do not decide whether the settlement of state law claims paired with FLSA claims requires judicial approval."). Because the Settlement

Agreement contains a release clause that, while broad, is limited to the circumstances relevant to the Action, the Court approves the release.

### 6. Non-Disparagement Clause

The Settlement Agreement includes a non-disparagement clause wherein the Parties "agree that they each shall not, directly or indirectly, at any time, make any statement (whether written, oral, electronic, or otherwise) or otherwise take any action that would or might reasonably be interpreted as harmful or disparaging to any of the Parties, its principals, employees or agents." (SA ¶ 9.) However, the clause also contains a carve-out, as the Settlement Agreement does "not preclude the Parties from making good faith truthful statements." (*Id.* ¶ 10.) Non-disparagement clauses are valid, so long as they contain such a carve-out. *See Chandler v. Total Relocation Servs., LLC*, No. 15-CV-6791, 2017 WL 3311229, at *4 (S.D.N.Y. Aug. 2, 2017); *Nights of Cabiria*, 96 F. Supp. 3d at 180 n.65. Thus, the Court approves the non-disparagement clause.

### 7. Attorney Fees

Under both the FLSA and NYLL, a successful plaintiff—including one who settles—is entitled to attorney fees. *See Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906, 2015 WL 4006896, at *2 (S.D.N.Y. July 1, 2015) (citing, inter alia, 29 U.S.C. § 216(b), NYLL §§ 198, 663(1)). Although courts may elect to award fees by considering either the lodestar method—the reasonable hourly rate of the attorney multiplied by the number of hours reasonably expended— or the percentage method—a percentage of the total amount recovered by the plaintiffs—"[t]he trend in [the Second] Circuit is toward the percentage method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Burgos v. JAJ Contract Furniture Inc.*, No. 23-CV-3739, 2024 WL 3834147, at *4 (S.D.N.Y. Aug. 14, 2024) (same). But even where

attorney fees are sought pursuant to the percentage of the fund method, "counsel must submit evidence providing a factual basis for the award." *Wolinsky*, 900 F. Supp. 2d at 336; *see also Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records."). A proper fee request thus includes "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Nights of Cabiria*, 96 F. Supp. 3d at 181. The Court must also determine the reasonableness of the hourly rate by considering the "prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012).

Here, Plaintiff's counsel seeks $754.00 in costs and a fee award of $11,415.33, which is approximately one-third of the total settlement amount. (SA Mem. 4.) Courts in the Second Circuit routinely award attorney fees in FLSA settlements of one-third of the total recovery. *See Zorn-Hill v. A2B Taxi LLC*, No. 19-CV-1058, 2020 WL 5578357, at *6 (S.D.N.Y. Sept. 17, 2020) (collecting cases); *Garcia v. Atlantico Bakery Corp.*, No. 13-CV-1904, 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016) ("[O]ne-third of the total award is the customary contingency percentage in FLSA cases."); *see also Ocasio v. Big Apple Sanitation, Inc.*, No. 13-CV-4758, 2016 WL 5376241, at *2 (E.D.N.Y. Mar. 16, 2016) (noting that the fee sought was "less than the typical contingency fee percentage of 33 1/3%"), *report and recommendation adopted*, 2016 WL 5390123 (E.D.N.Y. Sept. 26, 2016). Plaintiff's counsel's hourly rates range between $300 and $525, as evidenced by the time records appended to the Motion. (*See* SA Mem. 5; *see also id.*, Ex. B (Dkt. No. 24-2) (showing Plaintiff's counsel's time report of work related to this Action).) The proposed average hourly rate comes out to $98, which is significantly below the normal

rates charged by counsel and is therefore reasonable under the "lodestar" method as well. *See*

*Pucciarelli*, 2017 WL 2778029, at *2 (noting that the "lodestar method confirms [the]

conclusion" that a fee constituting 33.3% of FLSA settlement was reasonable).

  The Court found above that it is unable to determine if the settlement amount is fair. *See*

*supra* Section II.B.1.  If, however, the Court had found that the settlement amount was fair, the

Court would similarly find that the requested attorneys' fee award and costs are reasonable.

III. Conclusion

  For the foregoing reasons, the Parties' request for approval of their Settlement Agreement

is denied without prejudice.  The Parties may reapply for approval of a settlement that complies

with the Court's determinations in this Order.

SO ORDERED.

Dated: November 26, 2024
   White Plains, New York

              KENNETH M. KARAS
            United States District Judge